Sean A. O'Keefe – SBN 122417
**OKEEFE & ASSOCIATES**
**LAW CORPORATION, P.C.**
130 Newport Center Drive, Suite 140
Newport Beach, CA 92660
Telephone: (949) 334-4135
Fax: (949) 274-8639
Email: sokeefe@okeefelc.com
Special Litigation Counsel to the Debtors

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>SCOOBEEZ, INC., et al.<br><br>　　　　Debtors and Debtors in<br>　　　　Possession.<br><br>Affects:<br><br>　☐　All Debtors<br>　☒　SCOOBEEZ, INC., only<br>　☒　SCOOBEEZ GLOBAL, INC. only<br>　☐　SCOOBUR, LLC only | Adversary No. 2:20-ap-01017-WB<br><br>Lead Case No. 2:19-bk-14989-WB<br><br>Chapter 11<br><br>(Jointly Administered with<br>Case Nos. 2:19-bk-14991; 2:19-bk-14997)<br><br>**MOTION FOR SUMMARY JUDGMENT ON FIRST AND SECOND CLAIMS FOR RELIEF AND FOR INJUNCTIVE RELIEF** |
| SCOOBEEZ, INC., a California corporation, and SCOOBEEZ GLOBAL, INC., an Idaho corporation,<br><br>　　　　Plaintiffs,<br><br>v.<br><br>SHAHAN OHANESSIAN, SHOUSHANA OHANESSIAN AND GREGORI SEDRAKYAN<br><br>　　　　Defendants | **Date:** April 28, 2020<br>**Time:** 2:00 p.m.<br>**Place:** Courtroom 1375<br>Edward R. Roybal Federal Building and Courthouse<br>255 E. Temple Street<br>Los Angeles, CA 90012 |

Scoobeez Global ("Global") and Scoobeez, Inc. ("Scoobeez") (together the "Debtors") hereby move this Court, pursuant to Federal Rule of Civil Procedure 56, for an order granting the following relief:

A.  Summary judgment on the First Claim for Relief in that certain *Complaint For Declaratory Relief; Breach of Contract; Injunctive Relief* (the "Complaint") attached hereto as exhibit "A";

B.  The issuance of a preliminary injunction enforcing the terms of that certain *Letter Agreement re: Resignation from Board of Directors and Limitation on Shareholder Authority During the Pendency of Chapter 11 Bankruptcy* (the "Letter Agreement") by enjoining Shahan Ohanessian ("Ohanessian"), and any person acting in concert with him, from taking any of the following actions during the pendency of the Debtors' bankruptcy cases: 1) serving as a director or purporting to be a director of Debtors; 2) removing or purporting to remove any member of the board of directors of Global or Scoobeez, or the chief restructuring officer; 3) calling, noticing or participating in a special shareholders' meeting; or 4) taking any other action that would constitute involvement with, or in, the management and/or operations of the Debtors;

C.  Summary judgment on the Second Claim for Relief in the Complaint;

D.  The adjudication of all issues of fact as to which no genuine dispute exists and all issues of law that the Court deems to be subject to summary adjudication;

E.  Awarding the Debtors a monetary judgment against the defendants in the amount of all fees and costs incurred in this adversary; and

F.  Such further relief as the Court deems just and proper.

This Motion is made based upon the concurrently filed *Statement of Undisputed Facts and Proposed Conclusions of Law* (the "SUF"), the *Declaration of Scott Sheikh* (the "Sheikh Decl."), and the within Memorandum of Points and Authorities.

1

1        WHEREFORE, the Debtors pray for a judgment granting the foregoing relief.

2   DATED: February 21, 2019            OKEEFE & ASSOCIATES

3                                     LAW CORPORATION, P.C.

4

5                                   /s/ Sean A. O'Keefe

By: _____

Sean A. O'Keefe, Special
Litigation Counsel for the
Debtors

# TABLE OF CONTENTS

| Section | Title | Page |
|---------|-------|------|
| I | Summary of Grounds for Relief | 3 |
| II | Summary of Material Facts | 3 |
| | A.  The Chapter 11 Cases | 4 |
| | B.  The Debtors' Secured Creditor | 4 |
| | C.  The Appointment of a CRO and The Removal of the Ohanessian Board | 4 |
| | D.  The Admissions In The RFS Motion and In The Joinder | 5 |
| III | Legal Analysis and Authorities | 6 |
| | A.  The Summary Judgment Standard | 6 |
| | B.  Summary Judgment Should Be Granted On The First Claim For Relief | 7 |
| | C.  Specific Performance Via An Injunction Is Justified | 9 |
| | D.  Summary Judgment Should Be Granted On The Second Claim for Relief | 13 |
| IV | Conclusion | 14 |

# TABLE OF AUTHORITIES

## Cases

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986)................................................................ 8

Blackburn v. Charnley,  117 Cal.App.4th 758, 766, 11 Cal.Rptr.3d 885 (2004) ........................ 10

Byrne v. Laura, 52 Cal. App. 4th 1054, 1073, 60 Cal. Rptr. 2d 908, 920 (1997).......................... 10

Cazorla v. Hughes, No. CV 14-02112 MMM (CWx), 2014 WL 12235425, at *18–21 (C.D. Cal.
    Apr. 7, 2014)............................................................................................................................ 12

Celotex Corp. v. Catrett, 477 U.S. 317 (1986) ............................................................................. 8

eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391, 126 S. Ct. 1837, 1839 (2006)................ 12

FPI Development, Inc. v. Nakashima, 231 Cal.App.3d 367, 282 Cal.Rptr. 508 (1991) .................. 8

Glahe v. Arnett, 38 Idaho 736, 741, 225 P. 796, 798 (1924)....................................................... 15

Google, Inc. v. Jackman, No. 5:10-cv-04264 EJD (HRL), 2011 WL 3267907, at *5 (N.D. Cal. July
    28, 2011) ................................................................................................................................ 12

Kemmer v. Newman, 161 Idaho 463, 466, 387 P.3d 131, 134 (2016) ........................................... 15

Maryland Cas. Co. v. Pac. Coal & Oil Co., 312 U.S. 270, 273 (1941) ......................................... 13

Matsushita Elec. Indus. V. Zenith Radio Corp., 475 U.S. 574 (1986) ........................................... 8

McDonald v. John P. Scripps Newspaper, 210 Cal.App.3d 100, 104, 257 Cal.Rptr. 473 (1989)..... 8

MGM Studios, Inc. v. Grokster, Ltd., 518 F.Supp.2d 1197, 1210 (C.D. Cal. 2007)....................... 12

OTO, L.L.C. v. Kho, 8 Cal. 5th 111, 155, 447 P.3d 680, 711 (2019) ............................................. 9

Pure Wafer Inc. v. City of Prescott, 275 F. Supp. 3d 1173, 1176 (D. Ariz. 2017)........................... 12

Rent–A–Ctr., Inc. v. Canyon Television & Appliance Rental, Inc., 944 F.2d 597 (9th Cir. 1991) 12

Shell Gulf of Mexico Inc. v. Ctr. for Biological Diversity, Inc., 771 F.3d 632 (9th Cir. 2014)...... 13

Walsh v. W. Valley Mission Cmty. Coll. Dist., 66 Cal. App. 4th 1532, 1545, 78 Cal. Rptr. 2d 725,
    733 (1998)................................................................................................................................ 8

Westphal v. Nevills, 92 Cal. 545, 548, 28 P. 678 (1891) ............................................................... 9

## Statutes

Idaho Code 30-29-705 ................................................................................................................ 14

Cal. Civ. Code § 1550 ................................................................................................................ 8

Cal.Civ.Code 3384 ...................................................................................................................... 10

MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 127 (2007)................................................... 13

## Rules

Fed. R. Bankr. P. 7056................................................................................................................ 7

Fed. R. Civ. Proc. 56(a) .............................................................................................................. 7

Fed. R. Civ. Proc. 56(e) .............................................................................................................. 7, 8

Federal Rule of Civil Procedure 56 .............................................................................................. 7

# MEMORANDUM OF POINTS AND AUTHORITIES

## I

## <u>SUMMARY OF GROUNDS FOR RELIEF</u>

In June of 2019, Shahan Ohanessian ("Ohanessian"), the holder of over ninety percent of Global's common stock, resigned as an officer and director of Global pursuant to that certain *Written Consent of The Majority Shareholder of Scoobeez Global, Inc.* (the "Consent"). Concurrently with the execution of the Consent, Ohanessian and the Debtors entered into the Letter Agreement. In the latter contract, Ohanessian agreed not to interfere with or have any involvement in the management or operations of the Debtors during the pendency of their respective bankruptcy cases (the "Bankruptcy Cases"). In November of 2019, Ohanessian serially violated the Letter Agreement by purporting to 1) call and hold a special shareholders' meeting 2) remove one of Global's directors; and 3) appoint himself, his wife, Shoushana Ohanessian, and Grigori Sedrakyan to Global's board of directors (the "Board").

Ohanessian was removed from Board and excluded from management of the Debtors for compelling reasons. His attempt to reassert control over the Debtors is a clear breach of Letter Agreement that places at risk the Debtors' reorganization effort by, <u>inter alia</u>, imperiling the continued use of cash collateral. The Complaint and this Motion seek to remedy Ohanessian's wrongdoing by enforcing the terms of the Letter Agreement and compelling Ohanessian to pay for the damages he inflicted upon the Debtors through his conduct.

## II

## <u>SUMMARY OF MATERIAL FACTS</u>

### A.    <u>The Chapter 11 Cases.</u>

On April 30, 2019 (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Central District of California (the "Court"). (Sheikh Decl., ¶ 7). Since the Petition Date, the Debtors have managed their affairs and operated their businesses in the ordinary course as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. (Sheikh Decl., ¶ 10).

**B.     The Debtors' Secured Creditor**.

Hillair Capital Management LLC and its affiliates (collectively, "Hillair") hold a lien against substantially all of the Debtors' assets as security for an allowed claim in the approximate amount of $11.0 million (the "Hillair Claim"). (Sheikh Decl., ⁋ 11). Hillair has authorized the Debtors to continue using cash collateral on certain terms and conditions. (Sheikh Decl., ⁋ 13). These terms and conditions include the exclusion of Shahan Ohanessian ("Ohanessian"), Global's 90% shareholder, from management. Id.; (see also Sheikh Decl., ex. 4 & 5) Additionally, pursuant to the *Third Stipulation Regarding Continued Cash Collateral,* if any of the Debtors' existing board members, Brian Weiss, Howard Grobstein and Daniel Harrow, is removed from the board without Hillair's consent, the Debtors will be in default under the terms of this stipulation. (Sheikh Decl., ex. 4).

**C.     The Appointment of a CRO and The Removal of The Ohanessian Board**.

On May 16, 2019, the Debtors filed that certain *Application for an Order Authorizing and Approving (I) Appointing Brian Weiss as Chief Restructuring Officer of the Debtors Nunc Pro Tunc to May 16, 2019* [Docket No. 63] (the "CRO Application"). (Sheikh Decl., ex. 6). On June 6, 2019, the Court entered an order granting the CRO Application. (Sheikh Decl., ex. 6). On June 5, 2019, Ohanessian executed the Consent and the Letter Agreement. (Sheikh Decl., ex. 2 & 3). The following actions were authorized in the Consent:

1.   The number of authorized board seats was fixed at a minimum of one and a maximum of five;

2.   The existing board members, including Ohanessian, were removed; and

3.   Brian Weiss and Daniel W. Harrow were installed as the sole members of the Board[1].

(Sheikh Decl., ex. 2 & 3).

In the Letter Agreement, Ohanessian agreed, in pertinent part, as follows:

---

[1] Subsequently, the Committee was permitted to appoint one member to the Board of Directors consisting of Howard Grobstein.

4

Furthermore, I hereby agree not to use the following powers afforded to me as a shareholder of Scoobeez Global during the pendency of the Chapter 11 Bankruptcy proceedings:

- Vote my shares in Scoobeez Global to remove or otherwise alter the composition of the Board of Directors of Scoobeez Global or Scoobeez except in the event that another shareholder attempts to remove or otherwise alter the composition of the Board of directors of Scoobeez Global or Scoobeez;

- Be involved with the management or financial affairs of Scoobeez Global or Scoobeez; and

- Affect the business or operations of Scoobeez Global or Scoobeez except as requested and necessary to preserve the relationship with Amazon.com and its affiliated companies

***

I request that a Court of competent jurisdiction enter an order to this effect and expressly agree that because there is no other adequate remedy available, Scoobeez Global and/or Scoobeez may enforce this Letter Agreement by way of injunctive relief.

(Sheikh Decl., ex. 3).

The Letter Agreement and the Consent were signed and implemented to resolve a series of issues raised by Hillair and to secure the following critical benefits for the Debtors: The continued use of cash collateral for business operations; the vesting of corporate control in an independent Board of Directors; and the installation of an experienced chief restructuring officer ("CRO") to manage the Debtors' reorganization effort.  (Sheikh Decl., ¶ 24).

**D.    The Admissions In The RFS Motion And The Joinder**.

On November 22, 2019, Peter Rosenthal ("Rosenthal"), the holder approximately 2.6% of the common stock of Global, filed that certain *Motion for Relief From the Automatic Stay* (the "RFS Motion"). (Sheikh Decl., ex. 9). On November 23, 2019, Ohanessian filed an extensive *Joinder* to the RFS Motion (the "Joinder"). (Sheikh Decl., ex. 9). The RFS and Joinder were supported by the declarations of Rosenthal and Ohanessian, respectively. In these filings, Rosenthal and Ohanessian admitted all of the facts necessary for the grant of summary judgement on the First and Second Claims for Relief in the Complaint.

Rosenthal made the following representations in the RFS Motion:

"On October 29, 2019, majority shareholder Shahan Ohanessian served notice upon the Board, officers and bankruptcy counsel that due to their failure to call a shareholders meeting, he was calling one for November 1, 2019 to discuss the current status of Scoobeez Global, the actions of the current board of directors, Scoobeez Global's relationship with, and the recently filed lawsuit against, Amazon, as well as possible removal of the existing Board or some of its members."

"The Special Meeting of the Shareholders took place on November 1, 2019 at approximately 12:00 noon. Three shareholders were present."

"After review of the situation, the shareholders voted to remove Daniel W. Harrow as a member of the board, and voted to elect Chishona Ohanessian, Shahan Ohanessian and Gregori Sedrakyan as new directors."

"The first act of this new board was to ask the Debtors' management why a sale is a better alternative than restructuring and reorganization of the Debtors. It will seek answers into the issues of excess technology spending. It will deal with conflicts of interest among the officers of the debtors, and it may seek a new Chief Restructuring Officer who does not have ties to Hillair. It will not wrest control of the finances of the Debtors from its management."

(Sheikh Decl., ex. 8).

Ohanessian admits these same facts in the declaration he filed in support of the Joinder. (Sheikh Decl., ex. 9). He admits he called the meeting, he admits he participated in the removal of Harrow and the installation of three new directors, including himself, and he admits the new Board "shall seek" to replace Mr. Weiss as CRO if the new Board disagrees with his decisions regarding the Debtors' restructuring effort. Id. Since the Letter Agreement barred Mr. Ohanessian from having any involvement "with the management or financial affairs" of the Debtors, Ohanessian has admitted he breached the terms of this contract.

## III

## LEGAL ANALYSIS AND AUTHORITIES

### A.    The Legal Standard.

Under Federal Rule of Civil Procedure ("FRCP") 56, made applicable by Bankruptcy Rule 7056, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Proc. 56(a).  FRCP 56(e) provides that "if a party fails to properly support an assertion of fact

1  or fails to properly address another party's assertion of fact as required by Rule 56(c)," the Court

2  may, among other alternatives, "grant summary judgment if the motion and supporting materials –

3  including the facts considered undisputed – show that the movant is entitled to it."  Fed. R. Civ.

4  Proc. 56(e).  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Celotex Corp. v.

5  Catrett, 477 U.S. 317, 322 (1986); Matsushita Elec. Indus. V. Zenith Radio Corp., 475 U.S. 574,

6  586 (1986).

7  　　　Once a party has met its burden of demonstrating the lack of genuine dispute of material

8  fact, the "party opposing a properly supported motion for summary judgment may not rest upon

9  mere allegation or denials of his pleading, but must set forth specific facts showing that there is a

10  genuine issue for trial."  Anderson, 477 U.S. at 257.  A fact is "material" when, under the

11  governing substantive law, it could affect the outcome of the case.  Id. at 248.  A "genuine dispute"

12  of material fact arises if "the evidence is such that a reasonable jury could return a verdict for the

13  nonmoving party."  Id.

14  　　　The facts establishing all of the elements of the First and Second Claims for Relief alleged

15  in the Complaint are admitted in the RFS Motion and the Joinder filed by Ohanessian. Accordingly,

16  the claims before the Court can and should be decided by summary judgment.

17  　　　**B.**　　**Summary Judgment Should Be Granted As To The First Claim For Relief**.

18  　　　In the First Claim for Relief, the Debtors seek a judgment 1) finding Ohanessian in breach

19  of the Letter Agreement and 2) enforcing the terms of this agreement through the issuance of an

20  injunction barring Ohanessian, and anyone acting under his control or in concert with him, from

21  interfering with, or having any further involvement in the management of the Debtors during the

22  Bankruptcy Cases. A plaintiff asserting a breach of contract claim, such as the foregoing, must

23  plead and prove (1) the existence of a contract, (2) the plaintiff's performance or excuse for

24  nonperformance under this contract, (3) the defendant's breach of the contract, and (4) damages.

25  Walsh v. W. Valley Mission Cmty. Coll. Dist., 66 Cal. App. 4th 1532, 1545, 78 Cal. Rptr. 2d 725,

26  733 (1998); McDonald v. John P. Scripps Newspaper, 210 Cal.App.3d 100, 104, 257 Cal.Rptr. 473

27  (1989); FPI Development, Inc. v. Nakashima, 231 Cal.App.3d 367, 282 Cal.Rptr. 508 (1991).

28  These elements are satisfied in this case.

The Letter Agreement is a binding contract. See Cal. Civ. Code § 1550. The parties who entered into this agreement were capable of entering into a contract, they consented to the terms of this contract, the object of the contract was lawful, and there was sufficient cause or consideration for the agreement, to wit, the need to obtain the use of cash collateral. Id.; see also OTO, L.L.C. v. Kho, 8 Cal. 5th 111, 155, 447 P.3d 680, 711 (2019) ("Moreover, under basic contract law, the receipt of a benefit is *not* the exclusive measure of consideration; "a detriment to" one party is sufficient consideration for a contract even if the other contracting party receives no "benefit for his promise.") citing Westphal v. Nevills, 92 Cal. 545, 548, 28 P. 678 (1891). The Debtors performance under the contract, if any, was limited to managing the business, which in fact they have done.

The "breach" element is also established. In the Letter Agreement, Ohanessian contractually agreed he was barred from taking any of these actions during the pendency of the Bankruptcy Cases:

- Voting his shares in Global to remove or otherwise alter the composition of the Board of Directors of Global or Scoobeez except in the event that another shareholder attempts to remove or otherwise alter the composition of the Board of directors of Global or Scoobeez;

- Being involved with the management or financial affairs of Global or Scoobeez; and

- Affecting the business or operations of Global or Scoobeez except as requested and necessary to preserve the relationship with Amazon.com and its affiliated companies

(Sheikh Decl., ex. 3).

In the Joinder and in the declaration filed in support thereof, Ohanessian admits he breached the first prohibition in the Letter Agreement by *demanding* the Board call and notice a special meeting, voting to remove one of the Board's three directors, and purporting to appoint himself and his cronies to Global's board. (Sheikh Decl., ex. 9). Contrary to Ohanessian's contention, these actions were not authorized by the "except in the event that another shareholder attempts to remove or otherwise alter the composition of the Board of directors of Scoobeez Global or Scoobeez" language in the Letter Agreement. No shareholder other than Ohanessian held a sufficient number of shares to call a special

shareholders' meeting or to take any other action that could affect the composition of the Board. Only Ohanessian had this power. Accordingly, it was Ohanessian who orchestrated the Alleged Special Meeting and it was Ohanessian who purported to seize control of Global's board through this meeting. Rosenthal was a mere straw man.

Ohanessian also breached the prohibition in the second paragraph above by purporting to remove Harrow and appointing himself, his wife and Sedrakyan to the Board. Through these actions, he necessarily became "involved with the management…of Scoobeez Global".

The damages element is also satisfied. The purpose of the Letter Agreement was to a) avoid a dispute with Hillair over the use of cash collateral, 2) avoid litigation over the appointment of Chapter 11 trustee and 3) vest managerial power over the Debtors in independent managers who had the confidence of the creditors and the Court. By purporting to re-insert himself and his cronies back into the Debtors' corporate cockpit, Ohanessian has thwarted the entire purpose of the Letter Agreement. His actions have also damaged the Debtors by creating confusion over the issue of corporate control and corporate power in the midst of the Debtors' reorganization effort. Eliminating this confusion is particularly important now that a plan of reorganization has been filed.

## B.    Specific Performance Via An Injunction Is Justified.

Specific performance[2] of a contract may be ordered whenever (1) the contract is sufficiently definite to be enforced; (2) the contract is just and reasonable; (3) the plaintiff has performed; (4) there is a failure of performance by the defendant; (5) adequate consideration; and (6) an inadequate legal remedy. See Byrne v. Laura, 52 Cal. App. 4th 1054, 1073, 60 Cal. Rptr. 2d 908, 920 (1997); Blackburn v. Charnley, 117 Cal.App.4th 758, 766, 11 Cal.Rptr.3d 885 (2004). These elements are satisfied in this case.

The terms of the Letter Agreement are definite, the contract is just and reasonable, the Debtors have performed, Ohanessian breached the contract, consideration is adequate, and there is no adequate remedy at law. (Sheikh Decl., ex. 3).

---

[2] Cal.Civ.Code 3390 ("Except as otherwise provided in this Article, the specific performance of an obligation may be compelled.")

It is also clear from the docket in this case that purpose of the Letter Agreement and consent was to allow the company to move forward with the use cash collateral and to avoid a contest over control of the Debtor due to Ohanessian's past actions. (See Sheikh Decl., ex. 1).

Ohanessian has received and continues to receive the benefit of this consideration and he, like any other party-in-interest, has the right to seek relief from this Court if he believes the Debtors' current Board is failing to competently serve the best interests of the estate. As for the last element, the inadequacy of damages as a remedy was a fact stipulated to in the Letter Agreement:

> I request that a Court of competent jurisdiction enter an order to this effect and expressly agree that because there is no other adequate remedy available, Scoobeez Global and/or Scoobeez may enforce this Letter Agreement by way of injunctive relief.

(Sheikh Decl., ex. 3).

As the one court explained, the line between specific performance and injunctive relief is blurred in contract cases such as the instant one:

> In a breach of contract case, like this one, the distinction between specific performance and injunctive relief is not as clear as the parties suggest. When a party breaches a contract, a court may, in certain circumstances, order specific performance of a contract duty or order an injunction against breach of a contract duty. Restatement (Second) of Contracts § 357 (Am. Law Inst. 1981). If a court "orders a party to render the performance that [it] promised," that remedy is typically classified as specific performance. *Id.* § 357 cmt. a. If a court orders a party to *refrain* from certain conduct that would be inconsistent with the party's obligations under the contract, the remedy could be classified as either specific performance of the duty or an injunction against the prohibited conduct. *See id.* § 357 cmt. b. Further, the fact that an injunction may be mandatory or prohibitory undermines any distinction between specific performance and injunctive relief in a contract case. *See Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 878–79 (9th Cir. 2009).

> Perhaps recognizing the difficulty in distinguishing between specific performance and injunctions, courts often characterize requests for specific performance of contractual duties as requests for injunctive relief. *See Power P.E.O., Inc. v. Emps. Ins. of Wausau*, 201 Ariz. 559, 38 P.3d 1224, 1228 (Ariz. Ct. App. 2002). ("Indeed, courts frequently characterize an injunction preventing a party from breaching a contract as an order of specific performance.") (citing *Daley v. Earven*, 131 Ariz. 182, 639 P.2d 372 (Ariz. Ct. App. 1981)); *see also Lansmont Corp. v. SPX Corp.*, No. 5:10-cv-05860 EJD, 2012 WL 6096674, at *5–6 (N.D. Cal. Dec. 7, 2012) (recognizing a permanent injunction as a means of ordering specific performance).

1    Pure Wafer Inc. v. City of Prescott, 275 F. Supp. 3d 1173, 1176 (D. Ariz. 2017). In recognition of

2    this fact, the Pure Wafer court applied the four factors deemed a predicate for injunctive relief in

3    eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391, 126 S. Ct. 1837, 1839, 164 L. Ed. 2d 641

4    (2006), namely (1) a showing of irreparable injury; (2) that remedies available at law, such as

5    monetary damages, are inadequate to compensate for this injury; (3) that, considering the balance

6    of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the

7    public interest would not be disserved by a permanent injunction. Id. Although satisfaction of these

8    elements is not necessary is this case, because the parties contractually agreed injunctive relief

9    would be granted in the event of a breach of the Letter Agreement, they are nonetheless satisfied

10    on the facts.

11        Irreparable harm is "that for which compensatory damages are unsuitable." MGM Studios,

12    Inc. v. Grokster, Ltd., 518 F.Supp.2d 1197, 1210 (C.D. Cal. 2007) (quoting Wildmon v. Berwick

13    Universal Pictures, 983 F.2d 21, 24 (5th Cir. 1992). Here, the Debtors will suffer irreparable harm

14    unless injunctive relief is granted for the following reasons:

15        1. The exclusion of Ohanessian from management is requirement for the

16            continued use of cash collateral. Without this continued use, the Debtors'

17            business will fail; and

18        2. The Debtors have a proposed a plan of reorganization and the legal efficacy

19            and effect of this plan will be threatened if Ohanessian is allowed to claim

20            corporate control of the Debtors; and

21        3. Ohanessian is insolvent. Accordingly, awarding the Debtors a larger damage

22            judgment against him is an inadequate remedy.

23    See generally Cazorla v. Hughes, No. CV 14-02112 MMM (CWx), 2014 WL 12235425, at *18–21

24    (C.D. Cal. Apr. 7, 2014); Google, Inc. v. Jackman, No. 5:10-cv-04264 EJD (HRL), 2011 WL

25    3267907, at *5 (N.D. Cal. July 28, 2011); Rent–A–Ctr., Inc. v. Canyon Television & Appliance

26    Rental, Inc., 944 F.2d 597, 603 (9th Cir. 1991) (noting that "economic injury alone does not

27    support a finding of irreparable harm, because such injury can be remedied by a damage award,"

28

11

1   but intangible injuries that may also arise out of a contractual breach may constitute irreparable

2   harm).

3          An award of damages would be inadequate because, as stated above, Ohanessian could

4   never pay the damage award. The balance of hardships element tips sharply in favor of the

5   Debtors. The issuance of an injunction would only compel Ohanessian to do what he agreed—not

6   to interfere with the management of the Debtors during the pendency of the Bankruptcy Cases.

7   Ohanessian also cannot complain that this relief is inequitable for this same reason. Moreover, it

8   was Ohanessian who drove the Debtors into bankruptcy. Allowing the existing turnaround

9   management team the opportunity to right the corporate ship will benefit all parties-in-interest,

10  including Ohanessian.

11         As for the public interest, it will certainly not be "disserved" by the issuance of injunction

12  compelling Ohanessian to do that which he agreed. To the contrary, this relief is clearly in the

13  public interest to the extent the latter is congruent with what is in the best interests of the Debtors'

14  creditor body.

15         In weighing the merits of an injunction, the Court should also consider the fact that the

16  Letter Agreement allows Ohanessian to file a competing plan of reorganization and to otherwise

17  participate in the plan confirmation process. Accordingly, if he believes his vision for the Debtors

18  offers creditors a better opportunity, he is entitled to present this vision through his own plan. The

19  creditors will then have the right to vote. The fact that Ohanessian has not availed himself of this

20  opportunity speaks volumes.

21         **B.      <u>Summary Judgment Should Be Granted On The Second Claim For Relief</u>**.

22         In the Second Claim for Relief, the Debtors seek a judgment declaring stating as follows[3]:

23             A)  The Alleged Special Meeting was not properly called;

24

25  _____

    [3] The elements required to establish a claim for declaratory judgment are (1) a substantial
26  controversy exists (2) between parties having adverse legal interests and (3) of sufficient
    immediacy and reality to warrant the issuance of a declaratory judgment. <u>MedImmune, Inc. v.
27  Genentech, Inc.</u>, 549 U.S. 118, 127 (2007); <u>Maryland Cas. Co. v. Pac. Coal & Oil Co.</u>, 312 U.S.
    270, 273 (1941); <u>Shell Gulf of Mexico Inc. v. Ctr. for Biological Diversity, Inc.</u>, 771 F.3d 632, 635
28  (9th Cir. 2014).

1    B)  The Alleged Special Meeting was not properly noticed;

2    C) All actions taken at the Alleged Special Meeting are void;

3    D) Daniel W. Harrow was not validly removed from the Board by the

4    vote taken at the Alleged Special Meeting;

5    E) Ohanesian, Shoushana Ohanessian and Sedrakyan are not members

6    of the Board; and

7    F) The Board is limited to Daniel W. Harrow, Brian Weiss and Howard

8    Grobstein.

9    The defects in the notice given with respect to the Alleged Special Meeting justify these

10    findings.

11    The Idaho code section addressing special shareholder meetings states:

12
13    30-29-705.  NOTICE OF MEETING. (a) A corporation shall notify shareholders of the date, time and place of each annual and special shareholders' meeting ***no fewer than ten (10) nor more than sixty (60) days*** before the meeting date.

14
15    Idaho Code Ann. § 30-29-705 (emphasis added). Subsection (c) of the above statute states:
    Notice of a special meeting of shareholders ***must include a description of the purpose or purposes for which the meeting is called***.

16
17    Id. (emphasis added). Section 4 of Global's bylaws incorporates these same statutory provisions:
    Special meetings of the shareholders, for any purpose or purposes, unless otherwise prescribed by statute, may be called by the Chief Executive Officer or by the Board of Directors and must be called by the Chief Executive Officer at the request of the holders if not less than one-tenth of all the outstanding shares of the corporation entitled to vote are at the meeting.

18
19

20    (Sheikh Decl., ex. 7).

21    Based upon Rosenthal's representations to the Court, the purported Special Meeting failed

22    to comply with the requirements in the bylaws for, inter alia, the following reasons:

23    1.  To call a meeting without the consent of the board of directors or Global's chief

24    executive officer, the requesting shareholders would need to establish that they

25    held at least ten percent of Global's outstanding shares. Since Rosenthal's and

26    Dolan's combined holding are less than 2.7%, they lacked this power, and

27    Ohanessian was contractually precluded from making such a request;

28    2.  The alleged Special meeting was set on two-days-notice, not the minimum of

13

1      ten days; and

2           3.   There is no evidence indicating that notice of the meeting was given to Global's

3           other shareholders, or that this notice disclosed the meeting's intended purpose.

4  These deficiencies render the purported Special Meeting a nullity and all decisions made therein

5  void. See <u>Kemmer v. Newman</u>, 161 Idaho 463, 466, 387 P.3d 131, 134 (2016) ("Actions taken in

6  violation of a corporation's bylaws are void."); <u>Glahe v. Arnett</u>, 38 Idaho 736, 741, 225 P. 796, 798

7  (1924) (noting that actions taken at a meeting called in violation of the bylaws were void).

8                            **IV**

9                       **<u>CONCLUSION</u>**

10      Based on the foregoing, the Debtors would respectfully pray that the Court grant summary

11  judgment on the First and Second Claims for Relief alleged in the Complaint and issue an injunction

12  barring Ohanessian, and anyone acting in concert with him, from taking any action that would

13  interfere with, or involve him in, or with, the Debtors' management or operations during the

14  pendency of the Bankruptcy Cases, and award the Debtors the fees and costs incurred in this

15  adversary.

16  DATED: February 21, 2020              OKEEFE & ASSOCIATES

17                                      LAW CORPORATION, P.C.

18

19                                 /s/ Sean A. O'Keefe

20                          By: _____

                                    Sean A. O'Keefe, Special

21                                    Litigation Counsel for the

                                    Debtors

22

23

24

25

26

27

28

EXHIBIT A



Sean A. O'Keefe – SBN 122417
**OKEEFE & ASSOCIATES
LAW CORPORATION, P.C.**
130 Newport Center Drive, Suite 140
Newport Beach, CA 92660
Telephone: (949) 334-4135
Fax: (949) 274-8639
Email: sokeefe@okeefelc.com
Special Litigation Counsel to the Debtors

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

In re

SCOOBEEZ, INC., et al.

        Debtors and Debtors in
        Possession.

Affects:

☐  All Debtors
☒  SCOOBEEZ, INC., only
☒  SCOOBEEZ GLOBAL, INC. only
☐  SCOOBUR, LLC only

SCOOBEEZ, INC., a California corporation,
and SCOOBEEZ GLOBAL, INC., an Idaho
corporation,

        Plaintiffs,

v.

SHAHAN OHANESSIAN, SHOUSHANA
OHANESSIAN AND GREGORI
SEDRAKYAN

        Defendants

Adversary No.

Lead Case No. 2:19-bk-14989-WB

Chapter 11

(Jointly Administered with
Case Nos. 2:19-bk-14991; 2:19-bk-14997)

**COMPLAINT FOR DECLARATORY
RELIEF; BREACH OF CONTRACT;
INJUNCTIVE RELIEF**

Scoobeez, Inc., a California corporation ("Scoobeez"), and Scoobeez Global, Inc., an Idaho corporation ("Global") (together the "Plaintiffs" or the "Debtors"), hereby respectfully allege and state as follows:

### JURISDICTION AND VENUE

1.      On April 30, 2019 (the "Petition Date"), Global and Scoobeez filed petitions under Chapter 11 of Title 11 of the United States Bankruptcy Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Central District of California ( the "Bankruptcy Court").

2.      Global's Chapter was 11 case was assigned case number 2:19-bk-14991 (the "Global Case") and Scoobeez Chapter 11 case was assigned case number 2:19-bk-14989-WB (the "Scoobeez Case") (together the "Bankruptcy Cases").

3.      The claims in this adversary proceeding arise in and relate to the Bankruptcy Cases.

4.      The Bankruptcy Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334.

5.      This adversary proceeding is a core proceeding under, inter alia, 28 U.S.C. §§ 157(b)(2)(A) and (O).

6.      If this adversary proceeding is determined to be a non-core proceeding, the Plaintiffs consent to the entry of final orders and judgments by the bankruptcy judge. The defendants are hereby notified that Fed. R. Bankr. P. 7012(b) requires the defendants to admit or deny whether this adversary proceeding is a core or non-core proceeding and, if non-core, to state whether the defendants' consent, or do not consent, to the entry of final orders or judgment by the bankruptcy judge.

7.      This adversary proceeding is a civil proceeding arising in and related to the Bankruptcy Cases, and such case is pending before this Court. Accordingly, venue in this Court is proper under 28 U.S.C. § 1409(a).

1

**THE PARTIES**

8.    The Plaintiffs are the debtors and debtors-in-possession in their respective Bankruptcy Cases.

9.    Shahan Ohanessian ("Ohanessian") is an individual who is a shareholder of Global. Ohanessian purports to be a member of the board of directors of Global (the "Board").

10.    The Plaintiffs allege, on information and belief, that Ohanessian resides in Los Angeles County, California.

11.    Shoushana Ohanessian is the spouse of Ohanessian and she purports to be a member of the Board.

12.    The Plaintiffs allege, on information and belief, that Shoushana Ohanessian resides in Los Angeles County, California.

13.    Gregori Sedrakyan ("Sedrakyan") is an individual who purports to be a member of the Board.

14.    The Plaintiffs allege, on information and belief, that Sedrakyan resides in Los Angeles County, California.

**GENERAL ALLEGATIONS**

**The Debtor**

15.    Ohanessian owns over ninety percent of the common stock of Scoobeez Global.

16.    Global owns approximately ninety-six percent of the common stock of Scoobeez, Inc.

17.    As of the Petition Date, Ohanessian was the chairman of the Board and the chief executive officer of Global.

18.    Hillair Capital Management LLC and its affiliates (collectively, "Hillair") hold a lien against substantially all of the Plaintiffs' assets as security for an allowed claim in the approximate amount of $11.0 million (the "Hillair Claim").

19.    Hillair has authorized the Plaintiffs to continue using cash collateral on certain terms and conditions. These terms and conditions include the exclusion of Ohanessian from management of the Plaintiffs.

2

20.     On June 5, 2020, Ohanessian executed that certain *Written Consent of The Majority Shareholder of Scoobeez Global, Inc.* (the "Consent"). A true and correct copy of the Consent is attached hereto as Exhibit "A".

21.     The following directors were removed from the Board pursuant to the Consent: Shahan Ohanessian, Shoushana Ohanessian, Jowita Chomentowska, Lance Brinker and Richard Dolan (the "Ohanessian Board Members")

22.     Brian Weiss and Daniel W. Harrow were elected to serve on the Board in the place and stead of the Ohanessian Board Members effective as of June 5, 2019. Howard Grobstein was also elected to the Board in June of 2019.

23.     Concurrently with the execution of the Consent, Ohanessian executed that certain *Letter Agreement re: Resignation from Board of Directors and Limitation on Shareholder Authority During the Pendency of Chapter 11 Bankruptcy* (the "Letter Agreement"). A true and correct copy of the Letter Agreement is attached hereto as Exhibit "B".

24.     In the Letter Agreement, Ohanessian contractually agreed he would not engage in any of the following actions during the pendency of the Bankruptcy Cases:

• Vote his shares in Scoobeez Global to remove or otherwise alter the composition of the Board of Directors of Scoobeez Global or Scoobeez except in the event that another shareholder attempts to remove or otherwise alter the composition of the Board of directors of Scoobeez Global or Scoobeez;

• Be involved with the management or financial affairs of Scoobeez Global or Scoobeez; and

• Affect the business or operations of Scoobeez Global or Scoobeez except as requested and necessary to preserve the relationship with Amazon.com and its affiliated companies

(See exhibit "B").

25.     Pursuant to the *Third Stipulation Regarding Continued Cash Collateral* entered into by and among Hillair and the Debtors (the "Stipulation"), if any of the Board's existing members, Brian Weiss, Howard Grobstein and Daniel Harrow, are removed from the Board without Hillair's consent, the Debtors will be in default under the terms of the Stipulation. True and correct copies of the Stipulation and the order of this Court approving the same are attached

3

hereto as Exhibits "C" and "D" respectively.

26.     On May 16, 2019, the Debtors filed that certain *Application for an Order Authorizing and Approving (I) Appointing Brian Weiss as Chief Restructuring Officer of the Debtors Nunc Pro Tunc to May 16, 2019* [Docket No. 63] (the "CRO Application"). On June 6, 2019, the Court entered an order granting the CRO Application (the "CRO Order"). A true and correct copy of CRO Order is attached hereto as Exhibit "E".

27.     On October 18, 2019, Ohanessian purported to send then co-Chief Executive Officers of Scoobeez Global, George Voskanian and Scott A. Sheikh ("Sheikh"), a written notice demanding that Global call and notice a special meeting of Global's shareholders within fifteen days of said notice.

28.     On October 29, 2019, Ohanessian sent an email to Messrs. Voskanian, Shiekh, and the Board advising the Board he was calling a Special Meeting of the Shareholders and that such meeting would be held at 1:00 p.m. PST on November 1, 2019, at Global's principal offices.

29.     On October 31, 2019, Co-CEO Sheikh sent an email to Ohanessian advising him access to Global's principal offices would not be granted for the purpose of holding a shareholders' meeting on November 1, 2019 due to, inter alia, the lack proper notice of this meeting.

30.     Ohanessian, Richard Dolan and Peter Rosenthal contend they held a special meeting of Global's shareholders on November 1, 2019 and took the following actions at this meeting:

> A)  removed Daniel W. Harrow from the Board; and
>
> B)  elected the following individuals to the Board: Ohanessian, Shoushana Ohanessian and Sedrakyan.

(the "Special Meeting")

31.     On November 22, 2019, Ohanessian, using Peter Rosenthal and the Rosenthal Family Trust UTD 3/25/1988 (together "Rosenthal") as proxies, filed a motion for relief from the automatic stay in the Bankruptcy Cases (the "RFS Motion").

32.     In the RFS Motion, Ohanessian and Rosenthal prayed for an order confirming the

4

1    automatic stay did not bar the calling, noticing and holding of the Special Meeting, or the actions

2    purportedly taken at the Special Meeting.

3        33.    The purpose of the RFS Motion was to persuade the Bankruptcy Court to approve

4    the actions taken at the Special Meeting after the fact.

5        34.    The RFS Motion was denied on January 7, 2019 pursuant to an oral ruling of the

6    Bankruptcy Court.

7        35.    Ohanessian breached the terms of the Letter Agreement by calling, noticing and

8    attending the Special Meeting, purporting to remove Daniel W. Harrow from the Board at the

9    Special Meeting, purporting to appoint himself, Shoushana Ohanessian and Gregori Sedrakyan to

10   the Board at the Special Meeting, and by filing the RFS.

11       36.    The need for injunctive relief barring Ohanessian from interfering in the Debtors'

12   corporate affairs was explicitly provided for in the Letter Agreement and this relief is justified for

13   the following reasons:

        A.    <u>The PLainiffs are suffering irreparable harm</u>. Ohanessian's breach of the

14           terms of the Letter Agreement has caused, and is continuing to cause the Plaintiffs

15           irreparable harm by 1) placing at risk the Plaintiffs' ability to continue to use

16           Hillair's cash collateral; 2) undermining the authority of the CRO and the authority

17           of the validly elected members of the Board, Weiss, Harrow and Grobstein, to

18           manage the business affairs of the Plaintiffs during the Bankruptcy Cases, and 3)

19           engendering fear and confusion in the minds of the Plaintiffs' customers, creditors

20           and other parties-in-interest regarding the Debtors viability;

21       B)    <u>The equities justify the issuance of an injunction in favor of the Plaintiffs</u>.

22           The Plaintiffs, in their capacity as the debtors-in-possession, are fiduciaries. Their

23           legal task is to maximize the recovery to creditors. Ohanessian's objective, in

24           contrast, is to seize control over the Plaintiffs to enrich himself and his family

25           members; and

26       C)    <u>Injunctive relief is in the public interest</u>. Granting junctive relief in this case

27           in the public interest for the following reasons: Ohanessian's attempt to regain

28

5

control of the Plaintiffs in breach of the Letter Agreement places the Bankruptcy

Cases at the rights of all creditors.

### FIRST CLAIM FOR RELIEF

37.     The Plaintiffs hereby restate and reallege the allegations in paragraph 1 through 36

in support of this claim for relief.

38.     The Letter Agreement is a binding contract between the Plaintiffs and Ohanessian.

39.     The Plaintiffs fully performed their obligations under the terms of the Letter

Agreement.

40.     Ohanessian breached the terms of the Letter Agreement by calling, noticing and

attending the Special Meeting, purporting to remove Daniel W. Harrow from the Board at the

Special Meeting, purporting to appoint himself, Shoushana Ohanessian and Gregori Sedrakyan to

the Board at the Special Meeting, and by filing the RFS.

41.     The Plaintiffs have suffered damages on account of Ohanessian's breach of the

terms of the Letter Agreement. These damages include A) the attorneys fees and costs the

Plaintiffs were required to expend opposing Ohanessian's effort to regain control of the Plaintiffs;

B) Ohanessian's interference with the Plaintiffs' management has raised doubts in the minds of

creditors regarding the Plaintiffs' ability to proceed with a plan of reorganization in this case; and

C) Ohanessian's action have imperiled the Plaintiffs' ability to continue to use the Hillair's cash

collateral.

### SECOND CLAIM FOR RELIEF

42.     The Plaintiffs hereby restate and reallege the allegations in paragraph 1 through 36

in support of this claim for relief.

43.     A dispute exists between the Plaintiffs and the Defendants over A) whether the

Special Meeting was validly called, noticed and held, B) whether any of the actions taken at the

Special Meeting are valid and enforceable, C) whether Daniel W. Harrow was removed from the

Board; and D) whether Ohanessian, Shoushana Ohanessian and Sedrakyan were validly appointed

to the Board.

44.     To resolve the foregoing disputes, the Plaintiffs seek a judgment declaring and

stating that:

      A) The Special Meeting was not properly called;

      B) The Special Meeting was not properly noticed;

      C) All actions taken at the Special Meeting are void;

      D) Daniel W. Harrow was not validly removed from the Board by the vote taken at the Special Meeting;

      E) Ohanesian, Shoushana Ohanessian and Sedrakyan are not members of the Board; and

      F) The Board is limited to Daniel W. Harrow, Brian Weiss and Howard Grobstein.

## **PRAYERS FOR RELIEF**

WHEREFORE, the Plaintiffs pray for judgment as follows:

### **First Claim For Relief**

A judgment against Ohanessian for breach of the terms of the Letter Agreement in the amount of all damages caused by this breach, and for the issuance of a preliminary injunction barring Ohanessian, and anyone acting under his control or in concert with him, from interfering with, or having any further involvement in the management of the Plaintiffs during the Bankruptcy Cases.

### **Second Claim For Relief**

      A) A judgment declaring and stating The Special Meeting was not properly called;

      B) The Special Meeting was not properly noticed;

      C) All actions taken at the Special Meeting are void;

      D) Daniel W. Harrow was not validly removed from the Board by the vote taken at the Special Meeting;

      E) Ohanesian, Shoushana Ohanessian and Sedrakyan are not members of the Board; and

F) The Board is limited to Daniel W. Harrow, Brian Weiss and Howard
Grobstein.

**<u>All Claims for Relief</u>**

For an award of all fees and costs incurred by the Plaintiffs in the pursuit of the claims in this
adversary proceeding and for such further relief as the Court deems just and proper.

DATED: January 28, 2020                    OKEEFE & ASSOCIATES
                                           LAW CORPORATION, PC


                                     By: _____
                                                /s/ Sean A. O'Keefe
                                             Sean A. O'Keefe
                                     Special Litigation Counsel to Scoobeez
                                 Global, Inc., and Scoobeez, Inc., the plaintiffs

8

EXHIBIT A

**WRITTEN CONSENT OF THE MAJORITY SHAREHOLDER OF
SCOOBEEZ GLOBAL, INC.**

The undersigned, as the record owner of 150,000,000 shares of common stock and 18,400,000 shares of Series A preferred stock, representing approximately 92% of the outstanding shares entitled to vote of **SCOOBEEZ GLOBAL, INC.,** an Idaho corporation, does hereby consent by this writing to the adoption of the following resolutions:

**AMENDMENT OF THE BY-LAWS**

**RESOLVED,** that Article III, Section 2 of the By-Laws of Scoobeez Global, Inc. is deleted in its entirety and replaced with the following:

> **SECTION 2**    NUMBER, TENURE, AND QUALIFICATIONS
> The number of Directors of the corporation must be at least one but not more than five. Each director will hold office until the next annual meeting of shareholders and until the Director's successor has been elected and qualified.

**REMOVAL OF DIRECTORS**

**RESOLVED,** that the following named persons are hereby removed from the Board of Directors:

> Shahan Ohanessian
> Shoushana Ohanessian
> Jowita Chomentowska
> Lance Brinker
> Richard Dolan

**RESOLVED FURTHER,** that concurrently with the resignation of Shahan Ohanessian from the Board of Directors, he executed a Letter Agreement re: Limitation on Shareholder Authority During the Pendency of Chapter 11 Bankruptcy, which is adopted by the Board of Directors and may be executed on behalf of the company by any of its officers; the officers of the company may take any other action necessary to effectuate the foregoing.

**ELECTION OF DIRECTORS**

**RESOLVED,** that the following named persons are hereby elected to serve as the directors of the corporation to hold office until the next annual meeting of shareholders or until their successors are duly elected:

> Brian Weiss
> Daniel W. Harrow

The undersigned hereby consents to the foregoing resolutions and direct that this Written Consent be filed with the minutes of the proceedings of the shareholders of this corporation and that pursuant the relevant Idaho statutes and the Bylaws of this corporation, said resolutions shall have the same force and effect as if they were adopted at a meeting at which the undersigned were personally present.

**IN WITNESS WHEREOF,** the undersigned has executed this Written Consent as of this

5 ____ day of June 2019.

Shahan Ohanessian

**SHARES HELD:**
Common: 150,000,000
Series A Preferred: 18,400,000
2

**EXHIBIT "B"**

**Letter Agreement re: Resignation from Board of Directors and Limitation on Shareholder
Authority During the Pendency of Chapter 11 Bankruptcy**

To the Board of Directors of Scoobeez Global, Inc. and Scoobeez:

Effectively immediately, I hereby resign from the Board of Directors of Scoobeez Global
Inc. ("**Scoobeez Global**"), an Idaho corporation, and Scoobeez ("**Scoobeez**"), a California
corporation.

Furthermore, I hereby agree not to use the following powers afforded to me as a shareholder
of Scoobeez Global during the pendency of the Chapter 11 Bankruptcy proceedings:

- Vote my shares in Scoobeez Global to remove or otherwise alter the composition
  of the Board of Directors of Scoobeez Global or Scoobeez except in the event that
  another shareholder attempts to remove or otherwise alter the composition of the
  Board of Directors of Scoobeez Global or Scoobeez;
- Be involved with the management or financial affairs of Scoobeez Global or
  Scoobeez; and
- Affect the business or operations of Scoobeez Global or Scoobeez except as
  requested and necessary to preserve the relationship with Amazon.com and its
  affiliated companies.

I reserve any other shareholder rights, including, but not limited to, the right to propose a
Chapter 11 Plan in my capacity as a shareholder of Scoobeez Global.

I request that a Court of competent jurisdiction enter an order to this effect and expressly
agree that because there is no other adequate remedy available, Scoobeez Global and/or Scoobeez
may enforce this Letter Agreement by way of injunctive relief.

IN WITNESS WHEREOF, I have executed this Letter Agreement as of the date set
forth below.

Agreed to and accepted by:                    Approved as to form by:

Dated: _May 28, 2019_____                 Dated: _____

_____              _____
Shahan Ohanessian                             Name:

Agreed and accepted by:                       Agreed and accepted by:

Dated: _6/4/19_____                         Dated: _6/4/19_____

SCOOBEEZ GLOBAL, INC.,                        SCOOBEEZ,
an Idaho corporation                          a California corporation

By: _____                   By: _____

**EXHIBIT "C"**

Ashley M. McDow (245114)
John A. Simon (admitted Pro Hac Vice)
Shane J. Moses (250533)
**FOLEY & LARDNER LLP**
555 S. Flower St., 33rd Floor
Los Angeles, CA 90071
Telephone: 213.972.4500
Email: amcdow@foley.com
         jsimon@foley.com
         smoses@foley.com

Attorneys for Debtors and Debtors in
Possession, SCOOBEEZ, SCOOBEEZ GLOBAL,
INC., and SCOOBUR, LLC

# UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
## LOS ANGELES DIVISION

In re:
SCOOBEEZ, et al.[1]

      Debtors and Debtors in Possession.

Affects:
■ All Debtors
□ Scoobeez, ONLY
□ Scoobeez Global, Inc., ONLY
□ Scoobur LLC, ONLY

Case No. 2:19-bk-14989-WB
Jointly Administered:
2:19-bk-14991-WB; 2:19-bk-14997-WB

Chapter 11

**THIRD STIPULATION REGARDING CONTINUED USE OF CASH COLLATERAL**

---

[1] The Debtors and the last four digits of their respective federal taxpayer identification numbers are as follows: Scoobeez (6339); Scoobeez Global, Inc. (9779); and Scoobur, LLC (0343). The Debtors' address is 3463 Foothill Boulevard, Glendale, California 91214.

**TO THE HONORABLE JULIA W. BRAND, UNITED STATES BANKRUPTCY JUDGE; THE OFFICE OF THE UNITED STATES TRUSTEE; HILLAIR CAPITAL MANAGEMENT, LLC; THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS; AND ALL INTERESTED PARTIES AND/OR THEIR COUNSEL OF RECORD:**

Scoobeez, Scoobeez Global, Inc., and Scoobur, LLC, the debtors and debtors in possession (collectively the "Debtors") in the above-captioned jointly administered chapter 11 bankruptcy cases (the "Chapter 11 Cases"), the Official Committee of Unsecured Creditors (the "Committee") and Hillair Capital Management LLC and Hillair Capital Advisors LLC, the general partner of Hillair Capital Investments LP (collectively, "Hillair"), enter into this stipulation (the "Third Stipulation") regarding continued use of cash collateral as follows:

## RECITALS

A.    On May 1, 2019, the Debtors filed the Debtors' Emergency Motion for Entry of Interim Order Authorizing Use of Cash Collateral on an Interim Basis [Docket No. 13] (the "Cash Collateral Motion").

B.    The Debtors are currently using cash collateral with the consent of Hillair, and pursuant to this Court's prior orders approving use of cash collateral.

C.    On June 6, 2019, the Debtors and Hillair entered into the Second Stipulation for (1) Authorization to Use Cash Collateral; and (2) Appointment of Chief Restructuring Officer [Docket No. 132] (the "Second Stipulation") [Docket. No. 132], which was approved by the Court's order entered on June 7, 2019 [Docket No. 135]. The Second Stipulation provided for continued use of cash collateral through June 28, 2019, subject to the terms and conditions provided therein.

D.    On July 3, 2019, the Court entered the agreed Order Granting Continued Use of Cash Collateral Pursuant to That Certain Second Stipulation for (1) Authorization to Use Cash Collateral; and (2) Appointment of Chief Restructuring Officer [Docket No. 172], extending the Debtors' use of cash collateral through September 6, 2019.

E.    On September 19, 2019, the Court entered the agreed Order Granting Continued Use of Cash Collateral Through December 6, 2019 Pursuant to That Certain Second Stipulation for (1) Authorization to Use Cash Collateral; and (2) Appointment of Chief Restructuring Officer [Docket No. 328] (the "Continued Order"). The Continued Order extended the Debtors' authorization for use of

4851-7769-5406.1

cash collateral through December 6, 2019, subject to the terms of the Second Stipulation as modified by the Continued Order, and pursuant to the budget attached to the Continued Order. The Continued Order also set a continued hearing on the Cash Collateral Motion for December 5, 2019 at 10:00 a.m. (the "Continued Hearing"). The period covered by the current budget attached to the Continued Order is through December 6, 2019.

F.    The Debtors have prepared a new 13-week budget that covers the period through March 6, 2020 (the "Budget"), a copy of which is attached hereto as **Exhibit A**. The Budget has been approved by the Debtors' secured creditor Hillair Capital Management LLC ("Hillair") and the Official Committee of Unsecured Creditors (the "Committee").

G.    The Debtors, Hillair and the Committee agree to the terms of this Third Stipulation.

## STIPULATION

1.  The Debtors, Hillair and the Committee agree to the continued use of cash collateral, pursuant to the terms of the Second Stipulation, subject to the new Budget, through March 6, 2020. Specifically, the budget approved pursuant to the Continued Order is superseded by the Budget attached hereto, and the "Termination Date" as defined in paragraph 14.1(a) in the Second Stipulation is modified to March 6, 2020.

2.  Paragraph 12.1 of the Second Stipulation is hereby modified to add the following events of default:

    (k)    The composition of the Board of Directors of any of the Debtors is altered or any previous action to alter the composition of any such Board is determined to be valid such that Messrs. Weiss, Grobstein and Harrow no longer serve as the sole Directors of the Debtors.

    (l)    The Debtors' agreements with Amazon are terminated or Amazon is given relief from the automatic stay to effectuate its termination rights.

    (m)    Any chapter 11 plan of reorganization or liquidation is filed by the Debtors or any other third-party and Hillair does not consent to such plan.

DEBTORS' THIRD STIPULATION
REGARDING CONTINUED USE OF CASH COLLATERAL
Case No. 2:19-bk-14989-WB

-2-

4851-7769-5406.1

3. Except as provided for herein and in the *Stipulation Further Extending Deadline For Official Committee Of Unsecured Creditors To Challenge Claim And Lien Of Hillair Capital Management, LLC* [Docket. No. 439], the terms of the Second Stipulation remain in full force and effect.

4. The Debtors, Hillair and the Committee request entry of the order approving this Third Stipulation in the form attached hereto as **Exhibit B**.

DATED:  December 3, 2019                    **FOR THE DEBTORS:**


_/s/ Ashley M. McDow_
Ashley M. McDow

Ashley M. McDow (245114)
John A. Simon (admitted Pro Hac Vice)
Shane J. Moses (250533)
FOLEY & LARDNER LLP

Attorneys for Debtors SCOOBEEZ, SCOOBEEZ GLOBAL, INC., and SCOOBUR, LLC


**FOR THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS:**


David L. Neale
John-Patrick M. Fritz
LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.,

Attorneys for the Committee

3. Except as provided for herein and in the *Stipulation Further Extending Deadline For Official Committee Of Unsecured Creditors To Challenge Claim And Lien Of Hillair Capital Management, LLC* [Docket. No. 439], the terms of the Second Stipulation remain in full force and effect.

4. The Debtors, Hillair and the Committee request entry of the order approving this Third Stipulation in the form attached hereto as **Exhibit B**.

DATED: December 3, 2019                    **FOR THE DEBTORS:**


_____

Ashley M. McDow

Ashley M. McDow (245114)
John A. Simon (admitted Pro Hac Vice)
Shane J. Moses (250533)
FOLEY & LARDNER LLP

Attorneys for Debtors SCOOBEEZ, SCOOBEEZ
GLOBAL, INC., and SCOOBUR, LLC


**FOR THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS:**

_____

David L. Neale
John-Patrick M. Fritz
LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.,

Attorneys for the Committee

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**FOR HILLAIR CAPITAL MANAGEMENT LLC
AND HILLAIR CAPITAL ADVISORS LLC**

Steven M. Spector
Anthony J. Napolitano
BUCHALTER, A Professional Corporation

Attorneys for Hillair Capital Management LLC and
Hillair Capital Advisors LLC

DEBTORS' THIRD STIPULATION
REGARDING CONTINUED USE OF CASH COLLATERAL
Case No. 2:19-bk-14989-WB

4851-7769-5406.1

# Exhibit A

**Scoobeez, et al.**
Cash Forecast through 3/6/2020

| Forecast Week No. — Week Ended | 1 Forecast 12/13/2019 | 2 Forecast 12/20/2019 | 3 Forecast 12/27/2019 | 4 Forecast 1/3/2020 | 5 Forecast 1/10/2020 | 6 Forecast 1/17/2020 | 7 Forecast 1/24/2020 | 8 Forecast 1/31/2020 | 9 Forecast 2/7/2020 | 10 Forecast 2/14/2020 | 11 Forecast 2/21/2020 | 12 Forecast 2/28/2020 | 13 Forecast 3/6/2020 | Total Forecast | Percent of Collections |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Invoiced | 800,000 | 800,000 | 800,000 | 775,000 | 775,000 | 775,000 | 775,000 | 775,000 | 775,000 | 775,000 | 775,000 | 775,000 | 775,000 | 10,150,000 | |
| Routes | | | | | | | | | | | | | | | |
| Total Invoices | 800,000 | 800,000 | 800,000 | 775,000 | 775,000 | 775,000 | 775,000 | 775,000 | 775,000 | 775,000 | 775,000 | 775,000 | 775,000 | 10,150,000 | |
| Beginning Cash | 2,077,865 | 2,454,742 | 1,833,924 | 2,400,077 | 1,840,053 | 2,267,519 | 1,813,747 | 2,191,722 | 1,659,773 | 2,145,248 | 1,684,476 | 2,032,451 | 1,512,702 | | |
| Collections | 800,000 | 800,000 | 800,000 | 800,000 | 800,000 | 800,000 | 800,000 | 775,000 | 775,000 | 775,000 | 775,000 | 775,000 | 775,000 | 10,250,000 | 100.0% |
| **Cash Disbursements:** | | | | | | | | | | | | | | | |
| Fuel | 56,000 | 56,000 | 56,000 | 55,000 | 55,000 | 55,000 | 55,000 | 55,000 | 55,000 | 55,000 | 55,000 | 55,000 | 55,000 | 718,000 | 7.0% |
| Payroll & Payroll Expenses | | 910,000 | | 930,000 | | 900,000 | | 900,000 | | 900,000 | | 900,000 | | 5,530,000 | 54.0% |
| Executive Compensation | 32,500 | | 32,500 | | 32,500 | | 32,500 | | 32,500 | | 32,500 | | | 195,000 | 1.9% |
| Vehicle - Hertz (3) | 95,197 | 95,197 | 95,197 | 109,375 | 109,375 | 109,375 | 109,375 | 109,375 | 109,375 | 109,375 | 109,375 | 109,375 | 109,375 | 1,379,340 | 13.5% |
| Vehicle - Accidents/Tolls/Citations | 750 | 750 | | 750 | | | 750 | | 750 | | | 750 | | 78,000 | 0.8% |
| Worker's Compensation | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 554,031 | 5.4% |
| Insurance | 86,022 | | 86,022 | | 83,247 | | 83,247 | | 83,247 | | 83,247 | | | 266,957 | 2.6% |
| Rent & Utilities | 41,276 | | | 20,500 | | | 20,500 | | | | 75,227 | | | 61,500 | 0.6% |
| Phones & Service | | | | | | | | | | | | | | 91,000 | 0.9% |
| Travel | 12,000 | 12,200 | | | | | | 12,200 | | | | | 12,000 | 48,000 | 0.5% |
| IT Expenses | | | | 5,000 | | | | | | | 5,000 | | | 34,400 | 0.3% |
| Dues & Subscriptions | 13,000 | | 13,000 | | 13,000 | | 13,000 | | 13,000 | | 13,000 | | 13,000 | 48,000 | 0.5% |
| DBB Tax Preparation Fee | | 12,500 | | 75,227 | | 12,500 | 75,227 | | | | 75,227 | | 12,000 | 42,500 | 0.4% |
| Car Wash | 18,500 | | | | 18,500 | | | | | | | | | 6,000 | 0.1% |
| Other Expenses | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 130,000 | 1.3% |
| (Other Expenses) | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 6,000 | | |
| **Total Operating Cash Disbursements** | 262,973 | 1,223,168 | 193,697 | 1,319,874 | 221,875 | 1,213,622 | 239,375 | 1,266,799 | 249,375 | 1,195,622 | 244,375 | 1,254,599 | 249,375 | 9,134,728 | 89.1% |
| **Operating Cash Flow** | 537,027 | (423,168) | 606,303 | (519,874) | 578,125 | (413,622) | 560,625 | (491,799) | 525,625 | (420,622) | 530,625 | (479,599) | 525,625 | 1,115,272 | 10.9% |
| **Financing Cash Flows** | | | | | | | | | | | | | | | |
| Debt Principal | 40,000 | 40,000 | 40,000 | 40,000 | 40,000 | 40,000 | 40,000 | 40,000 | 40,000 | 40,000 | 40,000 | 40,000 | 40,000 | 520,000 | 5.1% |
| Debt Interest | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 1,950 | 0.0% |
| Bank Fees | | | | | | | | | | | | | | | 0.0% |
| Financing Cash Flows | 40,150 | 40,150 | 40,150 | 40,150 | 40,150 | 40,150 | 40,150 | 40,150 | 40,150 | 40,150 | 40,150 | 40,150 | 40,150 | 521,950 | 5.1% |
| **Restructuring Cash Flows** | | | | | | | | | | | | | | | |
| Debtor Counsel | 50,000 | 50,000 | | | 50,000 | | 50,000 | | | | 50,000 | | | 150,000 | 1.5% |
| Debtor CRO | 40,000 | 40,000 | | | | | | | | | | | | 90,000 | 0.9% |
| Debtor Advisor | | | | | | | | | | | | | | 150,000 | 1.5% |
| Board of Directors (2 Individuals) | | 5,000 | | | 5,000 | | 5,000 | | | | 5,000 | | | 15,000 | 0.1% |
| Secured Lender Counsel | | 50,000 | | | 50,000 | | 50,000 | | | | 50,000 | | | 37,500 | 0.4% |
| Committee Counsel | | 12,500 | | | 12,500 | | 12,500 | | | | 12,500 | | | 100,000 | 1.0% |
| Special Counsel (Hilliard) | | | | | | | | | | | | | | 20,000 | 0.2% |
| Special Counsel (Debtor) | | | | | | | | | | | | | | | 0.0% |
| US Trustee Fees | 20,000 | | | | | | | | | | | | 102,488 | 212,988 | 2.1% |
| Restructuring Cash Flows | 120,000 | 157,500 | | 110,510 | 110,510 | | 142,500 | | | | 142,500 | | 102,488 | 775,488 | 7.6% |
| **Net Total Cash Flow In / (Out)** | 376,877 | (620,818) | 566,153 | (560,024) | 427,465 | (453,772) | 377,975 | (531,949) | 485,475 | (460,772) | 347,975 | (519,749) | 382,987 | (182,176) | -1.8% |
| **Ending Cash Balance** | 2,454,742 | 1,833,924 | 2,400,077 | 1,840,053 | 2,267,519 | 1,813,747 | 2,191,722 | 1,659,773 | 2,145,248 | 1,684,476 | 2,032,451 | 1,512,702 | 1,895,689 | | |
| **Collateral Package** | | | | | | | | | | | | | | | |
| Cash on Hand | 2,454,742 | 1,833,924 | 2,400,077 | 1,840,053 | 2,267,519 | 1,813,747 | 2,191,722 | 1,659,773 | 2,145,248 | 1,684,476 | 2,032,451 | 1,512,702 | 1,895,689 | 1,895,689 | |
| AR | 3,180,000 | 3,180,000 | 3,180,000 | 3,160,000 | 3,140,000 | 3,120,000 | 3,100,000 | 3,100,000 | 3,100,000 | 3,100,000 | 3,100,000 | 3,100,000 | 3,100,000 | 3,100,000 | |
| Loan Receivable and Uncategorized As... | 1,654,172 | 1,654,172 | 1,654,172 | 1,654,172 | 1,654,172 | 1,654,172 | 1,654,172 | 1,654,172 | 1,654,172 | 1,654,172 | 1,654,172 | 1,654,172 | 1,654,172 | 1,654,172 | |
| Fixed Assets | 868,687 | 868,687 | 868,687 | 868,687 | 868,687 | 868,687 | 868,687 | 868,687 | 868,687 | 868,687 | 868,687 | 868,687 | 868,687 | 868,687 | |
| Other Assets | 62,668 | 62,668 | 62,668 | 62,668 | 62,668 | 62,668 | 62,668 | 62,668 | 62,668 | 62,668 | 62,668 | 62,668 | 62,668 | 62,668 | |
| **Total Collateral** | 8,220,269 | 7,599,451 | 8,165,604 | 7,585,580 | 7,993,046 | 7,519,274 | 7,877,249 | 7,345,300 | 7,830,775 | 7,370,003 | 7,717,978 | 7,198,229 | 7,581,216 | 7,581,216 | |
| Estimated Outstanding Secured Loan | 11,108,500 | 11,108,500 | 11,108,500 | 11,108,500 | 11,108,500 | 11,108,500 | 11,108,500 | 11,108,500 | 11,108,500 | 11,108,500 | 11,108,500 | 11,108,500 | 11,108,500 | 11,108,500 | |

# Exhibit B

Ashley M. McDow (245114)
John A. Simon (admitted Pro Hac Vice)
Shane J. Moses (250533)
**FOLEY & LARDNER LLP**
555 S. Flower St., 33rd Floor
Los Angeles, CA 90071
Telephone: 213.972.4500
Email: amcdow@foley.com
      jsimon@foley.com
      smoses@foley.com

Attorneys for Debtors and Debtors in
Possession, SCOOBEEZ, SCOOBEEZ GLOBAL,
INC., and SCOOBUR, LLC

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

# LOS ANGELES DIVISION

|  |  |
|---|---|
| In re:<br><br>SCOOBEEZ, et al.[1]<br><br>     Debtors and Debtors in Possession. | Case No. 2:19-bk-14989-WB<br>Jointly Administered:<br>2:19-bk-14991-WB; 2:19-bk-14997-WB<br><br>Chapter 11 |
| Affects:<br><br>■ All Debtors<br><br>☐ Scoobeez, ONLY<br><br>☐ Scoobeez Global, Inc., ONLY<br><br>☐ Scoobur LLC, ONLY | **ORDER GRANTING CONTINUED USE OF CASH COLLATERAL THROUGH MARCH 6, 2020, PURSUANT TO THAT CERTAIN THIRD STIPULATION REGARDING CONTINUED USE OF CASH COLLATERAL** |

---

[1] The Debtors and the last four digits of their respective federal taxpayer identification numbers are as follows: Scoobeez (6339); Scoobeez Global, Inc. (9779); and Scoobur, LLC (0343). The Debtors' address is 3463 Foothill Boulevard, Glendale, California 91214.

Scoobeez, Inc., Scoobeez Global, Inc., and Scoobur, LLC, the debtors and debtors-in-possession

in the above captioned jointly administered Chapter 11 bankruptcy cases (collectively, the "Debtors")

having filed the *Emergency Motion for Entry of Interim Order Authorizing Use of Cash Collateral on an

Interim Basis* [Docket No. 13] (the "Cash Collateral Motion");

The Debtors presently have authorization to use cash collateral on an interim basis through

December 6, 2019, pursuant to the *Order Granting Continued Use Of Cash Collateral Through

December 6, 2019 Pursuant To That Certain Second Stipulation For (1) Authorization To Use Cash

Collateral; And (2) Appointment Of Chief Restructuring Officer* [Docket No. 172], entered on

September 19, 2019 (the "Prior Order"), which approved continued use of cash collateral under that

certain *Second Stipulation for (1) Authorization to Use Cash Collateral; and (2) Appointment of Chief

Restructuring Officer* [Docket No. 132] (the "Second Stipulation") entered into by and among Hillair

Capital Management LLC and Hillair Capital Advisors LLC, the general partner of Hillair Capital

Investments LP (collectively, "Hillair"), the Debtors, and the Official Committee of Unsecured

Creditors (the "Committee"), which was approved by this Court pursuant to that certain *Order

Approving Second Stipulation for (1) Authorization to Use Cash Collateral; and (2) Appointment of a

Chief Restructuring Officer* [Docket No. 135].

The Debtors seek continued use of cash collateral on an interim basis as set forth in their *Third

Stipulation Regarding Continued Use of Cash Collateral* [Docket No. [____]] (the "Third Stipulation").

The Court having considered the Cash Collateral Motion, the Second Stipulation, the Third Stipulation,

all oppositions and other supplemental papers filed with respect to the continued use of cash collateral,

and good cause appearing therefor, the Court makes the following findings:

A.      The Debtors, the Committee, and Hillair support the Debtors' continued use of cash

collateral on an interim basis.

B.      There are no defaults under the terms of the Second Stipulation, the Prior Order, or any

previous stipulation or order authorizing the Debtors' use of cash collateral.

C.      The express written consent of Hillair under Paragraph 3.4(c) of the Second Stipulation

for the use of cash collateral for the payment of any insider of the Debtor or any management person or

entity retained by the Debtors' or the Debtors' estate is as provided for in the Budget (as defined in the

Third Stipulation and as attached to this order (the "Order")).

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1.    The Debtors' authorization to use cash collateral on a further interim basis pursuant to the terms of the Second Stipulation is approved subject to the modifications set forth in this Order.

2.    The term during which the Debtors are authorized to use cash collateral, as set forth in Paragraph 14.1(a) of the Second Stipulation, is hereby extended through March 6, 2020.

3.    The Budget as defined and referenced in Paragraph 3.3(a) of the Second Stipulation and attached as Exhibit B to the Second Stipulation is hereby superseded by the budget attached hereto as **Exhibit A** for the period from December 7 through March 6, 2019.

4.    Paragraph 12.1 of the Second Stipulation is hereby modified to add the following events of default:

(k)    The composition of the Board of Directors of any of the Debtors is altered or any previous action to alter the composition of any such Board is determined to be valid such that Messrs. Weiss, Grobstein and Harrow no longer serve as the sole Directors of the Debtors.

(l)    The Debtors' agreements with Amazon are terminated or Amazon is given relief from the automatic stay to effectuate its termination rights.

(m)    Any chapter 11 plan of reorganization or liquidation is filed by the Debtors or any other third-party and Hillair does not consent to such plan.

5.    The hearing on the Debtors' Emergency Motion for Entry of Interim Order Authorizing Use of Cash Collateral on an Interim Basis [Docket No. 13] (the "Motion") shall be continued to March 5, 2020, at 10:00 a.m. in the above-captioned court.

6.    Supplemental briefs in support of the Motion and continued use of cash collateral shall be filed and served by no later than February 20, 2020.

7.    Supplemental responses in opposition to the motion and continued use of cash collateral shall be filed and served by no later than February 27, 2020.

# # #

Case No. 2:19-bk-14989-WB

**PROOF OF SERVICE OF DOCUMENT**

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
Foley & Lardner LLP, 555 South Flower Street, Suite 3300, Los Angeles, CA 90072-2411

A true and correct copy of the foregoing document entitled (*specify*): **THIRD STIPULATION REGARDING CONTINUED USE OF CASH COLLATERAL**  will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) December 6, 2019, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

                                                            Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:                       ☒
On (*date*) December 6, 2019, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**Honorable Julia W. Brand**
**Central District of California**
**Edward R. Roybal Federal Building and Courthouse**
**255 E. Temple Street, Suite 1382**
**Los Angeles, CA 90012**

                                                    ☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____ , I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

                                                    ☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 12/6/2019 | Karla P. Hernandez | /s/ Karla P. Hernandez |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                           000027                           **F 9013-3.1.PROOF.SERVICE**

1.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:

- **John-Patrick M Fritz**   jpf@lnbyb.com, JPF.LNBYB@ecf.inforuptcy.com
- **Riebert Sterling Henderson**   shenderson@gibbsgiden.com
- **Vivian Ho**   BKClaimConfirmation@ftb.ca.gov
- **Alvin Mar**   alvin.mar@usdoj.gov
- **Ashley M McDow**   amcdow@foley.com,
  sgaeta@foley.com;mhebbeln@foley.com;swilson@foley.com;jsimon@foley.com
- **Stacey A Miller**   smiller@tharpe-howell.com
- **Kevin H Morse**   kmorse@clarkhill.com, blambert@clarkhill.com
- **Shane J Moses**   smoses@foley.com
- **Akop J Nalbandyan**   jnalbandyan@LNtriallawyers.com, cbautista@LNtriallawyers.com
- **Rejoy Nalkara**   rejoy.nalkara@americaninfosource.com
- **Anthony J Napolitano**   anapolitano@buchalter.com,
  IFS_filing@buchalter.com;salarcon@buchalter.com
- **David L. Neale**   dln@lnbyb.com
- **Aram Ordubegian**   ordubegian.aram@arentfox.com
- **Hamid R Rafatjoo**   hrafatjoo@raineslaw.com, bclark@raineslaw.com;cwilliams@raineslaw.com
- **Gregory M Salvato**   gsalvato@salvatolawoffices.com,
  calendar@salvatolawoffices.com;jboufadel@salvatolawoffices.com;gsalvato@ecf.inforuptcy.com
- **Steven M Spector**   sspector@buchalter.com, IFS_efiling@buchalter.com;salarcon@buchalter.com
- **United States Trustee (LA)**   ustpregion16.la.ecf@usdoj.gov
- **Eric K Yaeckel**   yaeckel@sullivanlawgroupapc.com

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**

EXHIBIT D

Ashley M. McDow (245114)
John A. Simon (admitted Pro Hac Vice)
Shane J. Moses (250533)
**FOLEY & LARDNER LLP**
555 S. Flower St., 33rd Floor
Los Angeles, CA 90071
Telephone: 213.972.4500
Email: amcdow@foley.com
    jsimon@foley.com
    smoses@foley.com

Attorneys for Debtors and Debtors in
Possession, SCOOBEEZ, SCOOBEEZ GLOBAL,
INC., and SCOOBUR, LLC



FILED & ENTERED

DEC 10 2019

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY tatum      DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

In re:

SCOOBEEZ, et al.[1]

      Debtors and Debtors in Possession.

Affects:

■ All Debtors

☐ Scoobeez, ONLY

☐ Scoobeez Global, Inc., ONLY

☐ Scoobur LLC, ONLY

Case No. 2:19-bk-14989-WB
Jointly Administered:
2:19-bk-14991-WB; 2:19-bk-14997-WB

Chapter 11

**ORDER GRANTING CONTINUED USE OF CASH COLLATERAL THROUGH MARCH 6, 2020, PURSUANT TO THAT CERTAIN THIRD STIPULATION REGARDING CONTINUED USE OF CASH COLLATERAL**

---

[1] The Debtors and the last four digits of their respective federal taxpayer identification numbers are as follows: Scoobeez (6339); Scoobeez Global, Inc. (9779); and Scoobur, LLC (0343). The Debtors' address is 3463 Foothill Boulevard, Glendale, California 91214.

Scoobeez, Inc., Scoobeez Global, Inc., and Scoobur, LLC, the debtors and debtors-in-possession

in the above captioned jointly administered Chapter 11 bankruptcy cases (collectively, the "<u>Debtors</u>")

having filed the *Emergency Motion for Entry of Interim Order Authorizing Use of Cash Collateral on an*

*Interim Basis* [Docket No. 13] (the "<u>Cash Collateral Motion</u>");

The Debtors presently have authorization to use cash collateral on an interim basis through

December 6, 2019, pursuant to the *Order Granting Continued Use Of Cash Collateral Through*

*December 6, 2019 Pursuant To That Certain Second Stipulation For (1) Authorization To Use Cash*

*Collateral; And (2) Appointment Of Chief Restructuring Officer* [Docket No. 172], entered on

September 19, 2019 (the "<u>Prior Order</u>"), which approved continued use of cash collateral under that

certain *Second Stipulation for (1) Authorization to Use Cash Collateral; and (2) Appointment of Chief*

*Restructuring Officer* [Docket No. 132] (the "<u>Second Stipulation</u>") entered into by and among Hillair

Capital Management LLC and Hillair Capital Advisors LLC, the general partner of Hillair Capital

Investments LP (collectively, "Hillair"), the Debtors, and the Official Committee of Unsecured

Creditors (the "Committee"), which was approved by this Court pursuant to that certain *Order*

*Approving Second Stipulation for (1) Authorization to Use Cash Collateral; and (2) Appointment of a*

*Chief Restructuring Officer* [Docket No. 135].

The Debtors seek continued use of cash collateral on an interim basis as set forth in their *Third*

*Stipulation Regarding Continued Use of Cash Collateral* [Docket No. [486]] (the "<u>Third Stipulation</u>").

The Court having considered the Cash Collateral Motion, the Second Stipulation, the Third Stipulation,

all oppositions and other supplemental papers filed with respect to the continued use of cash collateral,

and good cause appearing therefor, the Court makes the following findings:

A.      The Debtors, the Committee, and Hillair support the Debtors' continued use of cash

collateral on an interim basis.

B.      There are no defaults under the terms of the Second Stipulation, the Prior Order, or any

previous stipulation or order authorizing the Debtors' use of cash collateral.

C.      The express written consent of Hillair under Paragraph 3.4(c) of the Second Stipulation

for the use of cash collateral for the payment of any insider of the Debtor or any management person or

entity retained by the Debtors' or the Debtors' estate is as provided for in the Budget (as defined in the

4831-9136-2734.2

Third Stipulation and as attached to this order (the "<u>Order</u>")).

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1.      The Debtors' authorization to use cash collateral on a further interim basis pursuant to the terms of the Second Stipulation is approved subject to the modifications set forth in this Order.

2.      The term during which the Debtors are authorized to use cash collateral, as set forth in Paragraph 14.1(a) of the Second Stipulation, is hereby extended through March 6, 2020.

3.      The Budget as defined and referenced in Paragraph 3.3(a) of the Second Stipulation and attached as Exhibit B to the Second Stipulation is hereby superseded by the budget attached hereto as **<u>Exhibit A</u>** for the period from December 7 through March 6, 2019.

4.       Paragraph 12.1 of the Second Stipulation is hereby modified to add the following events of default:

(k)      The composition of the Board of Directors of any of the Debtors is altered or any previous action to alter the composition of any such Board is determined to be valid such that Messrs. Weiss, Grobstein and Harrow no longer serve as the sole Directors of the Debtors.

(l)      The Debtors' agreements with Amazon are terminated or Amazon is given relief from the automatic stay to effectuate its termination rights.

(m)      Any chapter 11 plan of reorganization or liquidation is filed by the Debtors or any other third-party and Hillair does not consent to such plan.

5.      The hearing on the Debtors' Emergency Motion for Entry of Interim Order Authorizing Use of Cash Collateral on an Interim Basis [Docket No. 13] (the "<u>Motion</u>") shall be continued to March 5, 2020, at 10:00 a.m. in the above-captioned court.

6.      Supplemental briefs in support of the Motion and continued use of cash collateral shall be filed and served by no later than February 20, 2020.

//

//

//

ORDER FOR CONTINUED USE OF CASH COLLATERAL
Case No. 2:19-bk-14989-WB

4831-9136-2734.2

7.     Supplemental responses in opposition to the motion and continued use of cash collateral shall be filed and served by no later than February 27, 2020.

# # #

Date: December 10, 2019

Julia W. Brand
United States Bankruptcy Judge

Scoobeez, et al.
Cash Forecast through 3/6/2020

| Forecast Week No. | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | | Percent of |
| Week Ended | 12/13/2019 | 12/20/2019 | 12/27/2019 | 1/3/2020 | 1/10/2020 | 1/17/2020 | 1/24/2020 | 1/31/2020 | 2/7/2020 | 2/14/2020 | 2/21/2020 | 2/28/2020 | 3/6/2020 | Total Forecast | Collections |
| Invoiced Routes | 800,000 | 800,000 | 800,000 | 775,000 | 775,000 | 775,000 | 775,000 | 775,000 | 775,000 | 775,000 | 775,000 | 775,000 | 775,000 | 10,150,000 | |
| Total Invoices | 800,000 | 800,000 | 800,000 | 775,000 | 775,000 | 775,000 | 775,000 | 775,000 | 775,000 | 775,000 | 775,000 | 775,000 | 775,000 | 10,150,000 | |
| Beginning Cash | 2,077,865 | 2,454,742 | 1,833,924 | 2,400,077 | 1,840,053 | 2,267,519 | 1,813,747 | 2,191,722 | 1,659,773 | 2,145,248 | 1,684,476 | 2,032,451 | 1,512,702 | | |
| Collections | 800,000 | 800,000 | 800,000 | 800,000 | 800,000 | 800,000 | 800,000 | 775,000 | 775,000 | 775,000 | 775,000 | 775,000 | | 10,250,000 | 100.0% |
| **Cash Disbursements:** | | | | | | | | | | | | | | | |
| Fuel | 56,000 | 56,000 | 56,000 | 55,000 | 55,000 | 55,000 | 55,000 | 55,000 | 55,000 | 55,000 | 55,000 | 55,000 | 55,000 | 718,000 | 7.0% |
| Payroll & Payroll Expenses | 10,000 | 930,000 | 10,000 | 930,000 | 10,000 | 900,000 | 10,000 | 900,000 | 10,000 | 900,000 | 10,000 | 900,000 | 10,000 | 5,530,000 | 54.0% |
| Executive Compensation | - | 32,500 | - | 32,500 | - | - | 32,500 | - | 32,500 | - | 32,500 | - | 32,500 | 195,000 | 1.9% |
| Vehicle - Hertz (3) | 95,197 | 95,197 | 95,197 | 109,375 | 109,375 | 109,375 | 109,375 | 109,375 | 109,375 | 109,375 | 109,375 | 109,375 | 109,375 | 1,379,340 | 13.5% |
| Vehicle - Accidents/Tolls/Citations | - | - | - | 750 | - | 37,500 | - | 750 | - | 37,500 | - | 750 | - | 78,000 | 0.8% |
| Worker's Compensation | 7,000 | 86,022 | 7,000 | 86,022 | 7,000 | 83,247 | 7,000 | 83,247 | 7,000 | 83,247 | 7,000 | 83,247 | 7,000 | 554,031 | 5.4% |
| Rent & Utilities | - | - | - | 20,500 | - | - | - | 20,500 | - | - | - | 20,500 | - | 61,500 | 0.6% |
| Insurance | 41,276 | - | - | 75,227 | - | - | - | 75,227 | - | - | - | 75,227 | - | 266,957 | 2.6% |
| Phones & Service | 13,000 | - | 13,000 | - | 13,000 | - | 13,000 | - | 13,000 | - | 13,000 | - | 13,000 | 91,000 | 0.9% |
| Travel | 12,000 | - | - | - | 12,000 | - | - | - | 12,000 | - | - | - | 12,000 | 48,000 | 0.5% |
| IT Expenses | - | 12,200 | - | - | 5,000 | - | - | 12,200 | - | - | 5,000 | - | - | 34,400 | 0.3% |
| Dues & Subscriptions | 18,500 | 500 | 500 | 500 | 500 | 500 | 18,500 | 500 | 500 | 500 | 500 | 500 | 500 | 42,500 | 0.4% |
| DBB Tax Preparation Fee | | | | | | | | | | | | | | - | 0.0% |
| Car Wash | - | - | 2,000 | - | - | - | 2,000 | - | - | - | 2,000 | - | - | 6,000 | 0.1% |
| Other Expenses | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 130,000 | 1.3% |
| Total Operating Cash Disbursements | 262,973 | 1,223,168 | 193,697 | 1,319,874 | 221,875 | 1,213,622 | 239,375 | 1,266,799 | 249,375 | 1,195,622 | 244,375 | 1,254,599 | 249,375 | 9,134,728 | 89.1% |
| **Operating Cash Flow** | 537,027 | (423,168) | 606,303 | (519,874) | 578,125 | (413,622) | 560,625 | (491,799) | 525,625 | (420,622) | 530,625 | (479,599) | 525,625 | 1,115,272 | 10.9% |
| **Financing Cash Flows** | | | | | | | | | | | | | | | |
| Debt Principal | | | | | | | | | | | | | | | 0.0% |
| Debt Interest | 40,000 | 40,000 | 40,000 | 40,000 | 40,000 | 40,000 | 40,000 | 40,000 | 40,000 | 40,000 | 40,000 | 40,000 | 40,000 | 520,000 | 5.1% |
| Bank Fees | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 1,950 | 0.0% |
| Financing Cash Flows | 40,150 | 40,150 | 40,150 | 40,150 | 40,150 | 40,150 | 40,150 | 40,150 | 40,150 | 40,150 | 40,150 | 40,150 | 40,150 | 521,950 | 5.1% |
| **Restructuring Cash Flows** | | | | | | | | | | | | | | | |
| Debtor Counsel | - | 50,000 | - | - | - | 50,000 | - | - | - | 50,000 | - | - | - | 150,000 | 1.5% |
| Debtor CRO | - | 40,000 | - | - | - | 25,000 | - | - | - | 25,000 | - | - | - | 90,000 | 0.9% |
| Debtor Advisor | | | | | | | | | | | | | | - | 0.0% |
| Board of Directors (2 Individuals) | - | 5,000 | - | - | - | 5,000 | - | - | - | 5,000 | - | - | - | 15,000 | 0.1% |
| Secured Lender Counsel | - | 50,000 | - | - | - | 50,000 | - | - | - | 50,000 | - | - | - | 150,000 | 1.5% |
| Committee Counsel | - | 12,500 | - | - | - | 12,500 | - | - | - | 12,500 | - | - | - | 37,500 | 0.4% |
| Special Counsel (Hillair) | 100,000 | - | - | - | - | - | - | - | - | - | - | - | - | 100,000 | 1.0% |
| Special Counsel (Debtor) | 20,000 | - | - | - | - | - | - | - | - | - | - | - | - | 20,000 | 0.2% |
| US Trustee Fees | - | - | - | - | 110,510 | - | - | - | - | - | - | - | 102,488 | 212,998 | 2.1% |
| Restructuring Cash Flows | 120,000 | 157,500 | - | - | 110,510 | - | 142,500 | - | - | 142,500 | - | - | 102,488 | 772,498 | 7.6% |
| **Net Total Cash Flow In / (Out)** | 376,877 | (620,818) | 566,153 | (560,024) | 427,465 | (453,772) | 377,975 | (531,949) | 485,475 | (460,772) | 347,975 | (519,749) | 382,987 | (182,176) | -1.8% |
| Ending Cash Balance | 2,454,742 | 1,833,924 | 2,400,077 | 1,840,053 | 2,267,519 | 1,813,747 | 2,191,722 | 1,659,773 | 2,145,248 | 1,684,476 | 2,032,451 | 1,512,702 | 1,895,689 | | |
| **Collateral Package** | | | | | | | | | | | | | | | |
| Cash on Hand | 2,454,742 | 1,833,924 | 2,400,077 | 1,840,053 | 2,267,519 | 1,813,747 | 2,191,722 | 1,659,773 | 2,145,248 | 1,684,476 | 2,032,451 | 1,512,702 | 1,895,689 | | |
| AR | 3,180,000 | 3,180,000 | 3,180,000 | 3,160,000 | 3,140,000 | 3,120,000 | 3,100,000 | 3,100,000 | 3,100,000 | 3,100,000 | 3,100,000 | 3,100,000 | 3,100,000 | | |
| Loan Receivable and Uncategorized As | 1,654,172 | 1,654,172 | 1,654,172 | 1,654,172 | 1,654,172 | 1,654,172 | 1,654,172 | 1,654,172 | 1,654,172 | 1,654,172 | 1,654,172 | 1,654,172 | 1,654,172 | | |
| Fixed Assets | 868,687 | 868,687 | 868,687 | 868,687 | 868,687 | 868,687 | 868,687 | 868,687 | 868,687 | 868,687 | 868,687 | 868,687 | 868,687 | | |
| Other Assets | 62,668 | 62,668 | 62,668 | 62,668 | 62,668 | 62,668 | 62,668 | 62,668 | 62,668 | 62,668 | 62,668 | 62,668 | 62,668 | | |
| **Total Collateral** | 8,220,269 | 7,599,451 | 8,165,604 | 7,585,580 | 7,993,046 | 7,519,274 | 7,877,249 | 7,345,300 | 7,830,775 | 7,370,003 | 7,717,978 | 7,198,229 | 7,581,216 | | |
| Estimated Outstanding Secured Loan | 11,108,500 | 11,108,500 | 11,108,500 | 11,108,500 | 11,108,500 | 11,108,500 | 11,108,500 | 11,108,500 | 11,108,500 | 11,108,500 | 11,108,500 | 11,108,500 | 11,108,500 | | |

EXHIBIT E



1

2

3

4

5

6

**FILED & ENTERED**

**JUN 07 2019**

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY egarcia    DEPUTY CLERK

7

8                    UNITED STATES BANKRUPTCY COURT

9                    CENTRAL DISTRICT OF CALIFORNIA

10                        LOS ANGELES DIVISION

| | |
|---|---|
| 11   In re | Lead Case No. 2:19-bk-14989-WB |
| 12   SCOOBEEZ, INC., a California corporation, et al. | Chapter 11 |
| 13              Debtors and Debtors in Possession. | Jointly administered with Case Nos. 2:19-bk-14991-WB and 2:19-bk-14997-WB) |
| 14 | |
| 15   Affects: | **ORDER APPROVING SECOND STIPULATION FOR (1) AUTHORIZATION TO USE CASH COLLATERAL; AND (2) APPOINTMENT OF CHIEF RESTRUCTURING OFFICER** |
| 16 | |
| 17   ☒   All Debtors | |
| 18   ☐   SCOOBEEZ, INC., only | **Hearing:** |
| 19   ☐   SCOOBEEZ GLOBAL, INC. only | Date:       June 6, 2019 |
| 20   ☐   SCOOBUR, LLC only | Time:       10:00 a.m. |
| 21 | Place:      U.S. Bankruptcy Court              Courtroom 1375              255 East Temple Street              Los Angeles, CA 90012 |
| 22 | Judge:      Hon. Julia W. Brand |

23

24

25

26

27

28

1

1      Having reviewed the *Second Stipulation for (1) Authorization to Use Cash Collateral; and*

2   *(2) Appointment of Chief Restructuring Officer* [Docket No. 132] (the "Stipulation") entered into

3   by and between Hillair Capital Management LLC and Hillair Capital Advisors LLC, the general

4   partner of Hillair Capital Investments LP (collectively, "Hillair"), Scoobeez, Inc., a California

5   corporation, debtor in the above-captioned chapter 11 bankruptcy case ("Scoobeez"), and its

6   affiliated debtors, Scoobeez Global, Inc., an Idaho corporation (formerly known as ABT

7   Holdings, Inc.) ("Scoobeez Global") and Scoobur, LLC, a California limited liability company

8   ("Scoobur") (collectively, the "Debtors"), and the Official Committee of Unsecured Creditors

9   (the "Committee"), and good cause appearing therefor:

10   **IT IS HEREBY ORDERED THAT:**

11   1.    The Stipulation is approved.

12   2.    The hearing on the Debtors' *Emergency Motion for Entry of Interim Order*

13   *Authorizing Use of Cash Collateral on an Interim Basis* [Docket No. 13] (the "Motion") shall be

14   continued to June 27, 2019 at ~~10:00 a.m.~~ ***2:00 p.m.*** in the above-captioned court.

15   3.    Supplemental briefs in support of the Motion and continued use of cash collateral

16   shall be filed and served by no later than June 20, 2019.

17   4.    Supplemental responses in opposition to the motion and continued use of cash

18   collateral shall be filed and served by no later than June 25, 2019.

19              # # #

Date: June 7, 2019

Julia W. Brand
United States Bankruptcy Judge

2

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 130 Newport Center Drive, Suite 140, Newport Beach, CA 92660.

A true and correct copy of the foregoing document entitled MOTION FOR SUMMARY JUDGMENT ON FIRST AND SECOND CLAIMS FOR RELIEF AND FOR INJUNCTIVE RELIEF will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:
Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On February 21, 2020, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:
- **Sean A OKeefe**    sokeefe@okeefelc.com, seanaokeefe@msn.com
- **United States Trustee (LA)**    ustpregion16.la.ecf@usdoj.gov

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**: On February 21, 2020 I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on February 21, 2019, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

**Via Federal Express**
Honorable Julia Brand
United States Bankruptcy Court
255 E. Temple Street, Suite 1382
Los Angeles, CA 90012

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 2/21/2020 | Rosanna Sumera | |
|---|---|---|
| Date | Printed Name | Signature |

# MAILING LIST

**Shahan Ohanessian**
1328 Doverwood Dr
Glendale, CA 91207

**Shoushana Ohanessian**
1328 Doverwood Drive
Glendale, CA 91207-1147

**Gregori Sedrakyan**
1127 Sonora Av
Glendale, CA 91201-1908